Argued and submitted October 11, 2013, affirmed March 26, petition for review denied August 7, 2014 (355 Or 880)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREW ROBERT LOBO,
*Defendant-Appellant.*

Washington County Circuit Court
C091025CR; A145450

322 P3d 573

Janet Lee Hoffman argued the cause for appellant. With her on the briefs was Sarah Jane Adams.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for one count of unlawful first-degree sexual penetration, ORS 163.411, and one count of first-degree sexual abuse, ORS 163.427. Defendant first assigns error to the trial court's denial of his motion to reset the trial date. Defendant argues that the trial court abused its discretion in denying that motion because the denial left defendant with insufficient time to examine physical evidence that the state had resisted providing to the defense until several days before trial. Defendant also assigns error to the trial court's denial of his motion to hold a pretrial hearing for the purpose of determining the victim's availability as a witness under OEC 803(18a)(b). Defendant contends that the trial court was required to hold such a hearing and that he was improperly denied his right under the Oregon Constitution to cross-examine the victim at that hearing. Finally, defendant assigns error to the trial court's denial of his motion to declare a mistrial, which was made after the victim testified. For the following reasons, we affirm.

The facts are not in dispute, and we begin by recounting those that are pertinent to defendant's first assignment of error. Defendant was charged with seven counts based on the allegation that he had, on a single occasion, inserted his finger into his five-year-old stepdaughter's vagina.[1] Some months prior to trial, the defense sought to obtain and test, over the state's opposition, several items in the state's possession, including a rape kit, items of the victim's clothing, and bedspreads. By order, the court allowed defense counsel to obtain and test those items subject to certain conditions, among them that defendant reveal the name of the lab that would conduct the testing and what tests were going to be performed. Defendant objected to those conditions on the ground that they would violate attorney-client privilege. He subsequently obtained an alternative writ of mandamus from the Oregon Supreme Court, which ordered the trial court to either remove the discovery conditions or to show cause for not doing so within 14 days. The alternative writ issued on February 16, 2010. The Supreme Court simulta-

---

[1] Five of the counts were dismissed before trial on the state's motion.

neously issued an order regarding a motion by defendant to stay the trial court proceedings. At that point, trial was scheduled to commence on March 3, 2010. The Supreme Court's order stated that, if the trial court removed the conditions, the motion for a stay was denied; if the court did not perform the "actions specified in the alternative writ of mandamus, the motion for a stay of the trial" would be deemed granted.

The following day, February 17, defendant filed a motion in the trial court to reset the scheduled trial date of March 3. Defendant had filed three previous motions to reset the trial, two of which had been granted. The state opposed the February 17 motion.

At a hearing on February 18, the trial court agreed to issue an order requiring the state to hand over the items without the objectionable conditions. The discussion then turned to defendant's motion to reset, which the state opposed by citing numerous previous delays by the defense as evidence of a purposeful attempt to delay the trial. Defense counsel responded by stating, among other things, that adherence to the March 3 trial date would not give the defense experts sufficient time to conduct their testing. The trial court denied the motion to reset the trial date.

Pursuant to the trial court's order, the state turned over the requested physical items to the defense on Friday, February 26. On the morning of trial, March 3, defense counsel again stated that there had not been sufficient time for the defense experts to meaningfully examine the items that the state had provided. Specifically, counsel stated, "The time it takes to do the tests and follow accredited lab procedures to do the tests is between four and eight weeks from when they receive the evidence. It could be as little as four weeks. It depends on what they discover, and what retesting is needed after that." The following exchange ensued:

"THE COURT: Well, you should know whether or not they're going to find something rather quickly, shouldn't you?

"[DEFENSE COUNSEL]: We should know within weeks of them receiving the evidence, whether they'll find something.

"THE COURT: And you said they received it when?

"[DEFENSE COUNSEL]: They received it Monday [March 1]. *** It was released to the Defense on [February 26], and transported to the expert, whose identity is privileged, and they received it on [March 1] ***.

"THE COURT: Okay. Well, I will direct you to tell your experts that they need to do their preliminary inquiry to see if there's anything there to be tested, to begin with. That should take so little time. Certainly that shouldn't take more than three weeks, and—or two weeks, if they give this case the priority it should be given.

"And if they find anything that is worth your discussion, in terms of needing a continuance, when you get to your case in chief, bring it up. If I don't hear anything from you, I'm going to assume that there was nothing there that was found, that you need to deal with.

"And if they find something there that they need to deal with, then we need to have a conversation, and maybe we have to continue the trial for—to allow your expert to do that, but we're not going to continue this trial date. We're going to go forward with our trial, and if something comes up, you let us know, and we'll deal with it that way."

Defense counsel then objected to proceeding to *voir dire* without being able to complete the testing, stating, "It does affect theories of the case, how we work with and determine who is a fair and impartial jury, how we present our case to that jury in opening, and even—and how we cross-examine the State's witnesses in their case in chief." The court replied:

"And, obviously if you need to recall any of the State's witnesses because you didn't have a chance to explore, if you find something with them, I'll certainly allow you to do that.

"But this case has been reset twice before by the Defense, and I understand that there [were] issues here with regard to the Mandamus and stuff, but Judge Kohl had already ruled that this case is not to be reset, and I'm going to give you, during the course of the trial, any continuance you need, and I don't think it'll hinder your Defense if you do find that there's some other DNA present in her bedding or underwear, or that sort of thing."

The court then told defense counsel two more times to inform the court in the event that the ongoing testing revealed anything that needed to be explored further by the defense. The court also stated, "I strongly urge you to tell your lab to get going on their preliminary. And you said they were, so that's all we need to talk about for now."

The trial commenced as scheduled on March 3; the first several days were consumed by various pretrial matters. On March 9, before *voir dire* had commenced, defense counsel again requested a postponement from the court, stating that the defense forensic experts had not had time to complete their analyses. Defense counsel stated that she had conferred with her analysts, noting, "And I did that yesterday. I got an update as to what's been completed and what still needs to be done." The court again stated that the trial would proceed, and once again instructed defense counsel to alert the court if its testing turned up useful evidence:

"We're going to pick a jury and if we get to the point where there is something to talk about we will talk about it.

"And we will make a decision based on what is in the information that is available to us that's fair not only to the State but also to the Defense. And if that means we have to have a continuance, then we will have a continuance. And it will be a reasonable continuance to allow both sides to deal with the newly discovered evidence so that there's no prejudice to either party.

"It's not like this is something new that we don't do. It happens in cases sometimes, and that's how we deal with it. It's appropriately dealt with that way."

At no time during the trial did defense counsel indicate that the testing had revealed anything of consequence or request a continuance. A short time before closing arguments, the trial court addressed defense counsel concerning the testing: "[A]nd you did some analysis and didn't come up with anything, either, or we'd be hearing about it." Defense counsel did not respond to that statement. On March 16, some two weeks after the defense gave the items to their analysts, the jury found defendant guilty on both counts. This timely appeal followed.

As noted, defendant first assigns error to the trial court's denial of the February 17 motion to reset the trial date. "A motion for continuance is addressed to the sound discretion of the court. Its ruling will be disturbed upon appeal only for an abuse of that discretion." *State v. Hickey*, 79 Or App 200, 203, 717 P2d 1287 (1986). "An abuse of discretion occurs when a court acts beyond the boundaries established by law. One of the boundaries established by law is that counsel must be given a reasonable amount of time to prepare for a hearing that could result in the deprivation of a liberty interest." *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286-87, 44 P3d 591 (2002) (citation omtitted).

Defendant contends that the denial of his motion to reset was an abuse of the trial court's discretion because the court relied on improper factors in denying the motion, because the denial thwarted the intent of the Supreme Court's alternative writ of mandamus, and because the denial deprived defendant of his Oregon and federal constitutional rights to counsel and to a fair trial.

We need not decide whether the trial court's denial of the motion to reset was error for any of the reasons claimed by defendant, because, even assuming that it was, we agree with the state that it was harmless error. "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). *See* ORS 138.230 ("After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."); *State v. Nelson*, 162 Or 430, 444, 92 P2d 182 (1939) (the trial court's continuance or postponement of a trial "will not be disturbed on appeal, except for a manifest abuse of discretion prejudicial to the defendant").

Defendant's opening brief asserts that he was prejudiced by the denial of the motion to reset because that denial forced defense counsel to proceed "without knowing what their independent investigation of the physical evidence

might disclose." Defendant notes that trial counsel informed the court that the defense testing would take from between four to eight weeks and that the trial actually concluded just over two weeks after the state had turned over the items to be tested. Defendant also asserts that "[b]eing forced to proceed [to trial] without proper preparation is inherently prejudicial."

Defendant's arguments misapprehend the standard by which we assess whether an error was harmless. The inquiry concerns the degree to which the court's putative error affected the verdict; to properly conduct that inquiry, it is necessary to examine what information was *actually* revealed by the defense testing. Defendant does not assert that the defense testing, in the end, revealed any exculpatory information.[2] Instead, his argument is premised on the notion that he was "inherently" prejudiced by being forced to proceed to trial while defense counsel did not know what the defense testing would eventually reveal. For that proposition, defendant cites *Hickey*, a case in which we held that it was reversible error to deny the defendant's motion to postpone his trial after his attorney's briefcase was stolen on the eve of that trial. 79 Or App at 204. The briefcase contained "a considerable amount of work product," including the attorney's notes and research. *Id.* at 202. In concluding that there was reversible error, we stated, "We cannot say that the court's refusal to allow the continuance did not

---

[2] In a memorandum of additional authorities, defendant eventually points to the fact that a pair of underwear, which may have been seized as part of the police investigation, was—he contends—either lost or destroyed while in police custody. He thus asserts that he was prejudiced by his inability to present to the jury that a pair of underwear had gone "missing" while in police custody. We respond with two points: First, as the title suggests, a memorandum of additional authorities is not a proper vehicle in which to advance arguments that were not made in defendant's opening or reply briefs. *See* ORAP 5.85(2) ("A memorandum of additional authorities *** [s]hall include citations to relevant cases and statutes and shall identify the issue that has been previously briefed to which the new citations apply[.]"). Second, even if we were to treat that argument as properly before us, it is clear from the record that defense counsel knew about the "missing" underwear during the trial, but did not, for whatever reason, alert the trial court about that newly discovered fact, despite the trial court's numerous requests that defense counsel do just that. Thus, whatever the likelihood that introduction of the missing underwear would have affected the verdict, that likelihood did not arise as a result of the trial court's denial of the motion to reset, but rather because defense counsel did not attempt to make use of that potential evidence.

deny to defendant his attorney's best efforts on his behalf, which includes adequate preparation for trial." *Id.* at 204.

Here, the trial court's ruling, in effect, forced defense counsel to proceed on the assumption that the defense testing would not reveal any exculpatory or useful evidence, while explicitly leaving open the possibility of a continuance or other appropriate relief in the event that subsequent defense testing undercut that assumption. However, defendant's briefing does not identify any useful or exculpatory evidence that was eventually revealed by the defense testing *after* trial; that is, defendant points to nothing that subsequently undercut the assumption that defense counsel relied on, he only asserts that the testing *could* have done so. Thus, unlike the attorney in *Hickey*, it turns out that defense counsel in this case had, during trial, all of the pertinent information that was needed to try the case.[3] In the absence of any specific indication of how defense counsel would have *actually* prepared or tried the case differently in light of what was eventually (not) revealed by the defense testing, it is impossible to conclude other than that there was little likelihood that the denial of the motion to reset affected the verdict.

As noted, defendant asserts that the trial court's denial of the motion to reset deprived him of certain federal constitutional rights, specifically the rights to "[h]ave [c]ounsel [c]onduct an [a]dequate [i]nvestigation, to a [f]air trial and to [d]ue [p]rocess." "A federal constitutional error is harmless, such that the conviction will be upheld, 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006) (quoting *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986)). For the reasons discussed above, even supposing the denial of one or more federal constitutional rights—a matter that we do not decide—we conclude that any error in denying the motion to reset was harmless beyond a reasonable doubt.[4]

---

[3] *See* 261 Or App at 747 n 2.

[4] Despite our conclusion that defendant was not harmed by any error in denying the motion to reset, we add that, although we do not resolve the question, it is a close call whether the trial court abused its discretion in denying that motion.

Defendant's second and third assignments of error both concern the trial court's admission of the victim's hearsay statements. Before turning to defendant's specific arguments, we recount the pertinent facts. Before trial, and pursuant to OEC 803(18a)(b), the state filed a notice of intent to offer the victim's hearsay statements concerning the incident of abuse.[5] In response, defendant filed a motion asking the court to conduct a pretrial hearing in order to determine the victim's "availability" to testify at trial. At a hearing on defendant's motion, the state indicated that it intended to call multiple witnesses at trial who would testify that the victim told them that defendant had penetrated her with his finger. Defendant insisted that OEC 803(18a)(b) required the court to hold a pretrial hearing to determine the victim's availability, specifically to determine if the victim had "a substantial lack of memory of the subject matter of the [out-of-court] statement." Defendant also maintained that both the Oregon Evidence Code and the federal and state confrontation clauses entitled him to cross-examine the victim at the proposed pretrial hearing.

During a lengthy discussion on the matter, the state maintained that the victim's out-of-court statements would be admissible under OEC 803(18a)(b) because she would testify at trial and be subject to cross-examination. The state also indicated that it would, immediately before her testimony and outside the presence of the jury, attempt to establish that the victim was competent to testify. The court ultimately decided that it would not hold the requested pretrial hearing, but instead suggested that it would revisit the issue of the victim's availability at the competency hearing. In accord with its position that it was not required to show the victim's unavailability as a prerequisite to introducing the victim's hearsay statements under OEC 803(18a)(b), the state told the court that it would not attempt to establish the victim's availability at the competency hearing.

Several factors would seem to indicate an affirmative answer on the point, particularly the very short length of time between when the discovery was provided and trial and the fact that certain of defendant's constitutional rights were implicated. *See generally Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

[5] The text of OEC 803(18a)(b) is set out below. 261 Or App at 751-52.

At trial, the state called multiple witnesses who all testified that the victim had told them, in various verbal iterations, that defendant "had put his finger in my hole." Before calling the victim to testify, the state asked the court to conduct the competency hearing outside the presence of the jury. Defense counsel responded by stating that she might want to ask some "follow-up questions"; she cited the confrontation clauses of the Oregon and federal constitutions, along with *State v. Kitzman*, 323 Or 589, 920 P2d 134 (1996), for the proposition that she was entitled to examine the witness. The state responded that the victim's competency was a legal matter for the court and that defendant had no right to confront the witness before she testified. The court denied the defense the opportunity to ask the victim questions at the competency hearing.

The court ultimately concluded that the victim was competent to testify, a ruling that is not challenged on appeal. In reaching that conclusion, the court mentioned the fact that the victim had not been asked about her ability to recall the incident of abuse. The court stated, "I think she meets that minimal [competency] standard. I'm not sure how she's going to do when we get to the State's case, in terms of questioning what happened to her, but we'll have to wait and see. That's not the issue here, now."

When the jury returned after the competency examination, the victim testified during direct examination that defendant had "poked my hole" with his fingers. The defense cross-examined the victim at some length about a broad range of subjects. The victim, although less than cogent at some points, was responsive to the vast majority of the defense questioning. She indicated that she could not remember the circumstances pertaining to two of the out-of-court statements that previous witnesses had attributed to her.

After the state's redirect examination, the court heard from the attorneys outside the presence of the jury. Defense counsel argued that the victim's testimony demonstrated a lack of ability to remember her hearsay statements and stated that "what she's shown is that she's not available, because of this lack of memory." The state argued that

"[t]he witness, of course, is available. She's competent, as you've already ruled, and there should be no issue proceeding forward with the trial." Defense counsel again asserted that the testimony revealed that the victim was "not available." Defense counsel then asked the court to declare a mistrial, citing OEC 803(18a)(b), along with the state and federal confrontation clauses as the grounds for such. The court denied the motion.

In defendant's second assignment of error, he contends that the trial court erred by denying his motion for a pretrial hearing to determine if the victim was "unavailable" for purposes of OEC 803(18a)(b); he argues that the statute required such a pretrial hearing. In a related argument, defendant contends that he was erroneously denied the opportunity to cross-examine the victim at that pretrial hearing for the purpose of determining whether she was "unavailable" under OEC 803(18a)(b); he contends that the denial of that opportunity violated his rights under the Confrontation Clause of Article I, section 11, of the Oregon Constitution. The state responds that, because the victim testified at trial and was subject to cross-examination, OEC 803(18a)(b) did not require the court to hold a pretrial unavailability hearing.

Because defendant's arguments are premised on statutory and constitutional interpretations, we review for legal error. *E.g., State v. Edwards*, 231 Or App 531, 533, 219 P3d 602 (2009) (statutory interpretation); *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999) (constitutional interpretation).

We first address defendant's contention that the trial court erroneously denied his motion for a pretrial unavailability hearing under OEC 803(18a)(b). That rule provides that certain hearsay statements are admissible in sexual-abuse cases notwithstanding the general hearsay inadmissibility rule of OEC 802:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 * * * is not excluded by [OEC 802] if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12

years of age when the statement was made ***. However, if a declarant is unavailable, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted."

OEC 803(18a)(b) goes on to provide a definition of "unavailable" and to prescribe a specific procedure for determining whether a witness is "unavailable":

"For purposes of this paragraph, in addition to those situations described in [OEC 804(1)], the declarant shall be considered 'unavailable' if the declarant has a substantial lack of memory of the subject matter of the statement, is presently incompetent to testify, is unable to communicate about the abuse or sexual conduct because of fear or other similar reason or is substantially likely, as established by expert testimony, to suffer lasting severe emotional trauma from testifying. Unless otherwise agreed by the parties, the court shall examine the declarant in chambers and on the record or outside the presence of the jury and on the record. The examination shall be conducted immediately prior to the commencement of the trial in the presence of the attorney and the legal guardian or other suitable person as designated by the court. If the declarant is found to be unavailable, the court shall then determine the admissibility of the evidence. *** The purpose of the examination shall be to aid the court in making its findings regarding the availability of the declarant as a witness and the reliability of the statement of the declarant. In determining whether a statement possesses indicia of reliability under this paragraph, the court may consider, but is not limited to, [a list of statutory factors]."

The state's argument is correct: OEC 803(18a)(b) does not require the trial court to hold an availability hearing where the hearsay declarant testifies and is subject to cross-examination. It is critical to remember that OEC 803(18a)(b) does not create a barrier to the admissibility of evidence. Instead, the opposite is true. OEC 803(18a)(b) creates an exception to the general prohibition against the admissibility of hearsay evidence, provided that certain

conditions are met. The first sentence of the statute provides, "A statement made by a person concerning an act of abuse as defined in ORS 107.705 * * * is not excluded by [OEC 802] if the declarant *either testifies at the proceeding and is subject to cross-examination, or* is unavailable as a witness * * *." OEC 803(18a)(b) (emphasis added). When read in view of its purpose, the syntax of that sentence creates, by way of analogy, two doors. If the proponent of the evidence passes through either of those doors, the statements at issue are admissible under the statute. The proponent unlocks the first door when the declarant "testifies at the proceeding and is subject to cross-examination[.]" The proponent unlocks the second door in a criminal trial only by showing that the declarant is "unavailable" for one of the statutory reasons, that the declarant was chronologically or mentally under age 12 when making the statement, that the statements have sufficient statutory indicia of reliability, and that there is corroborative evidence.

In *State v. Lamb*, 161 Or App 66, 983 P2d 1058 (1999), we reached the conclusion that a declarant's mental or chronological age is irrelevant when the state seeks to admit a testifying declarant's out-of-court statements. There, a defendant moved, *in limine*, to exclude certain out-of-court statements of a 17-year-old victim. The victim was scheduled to testify and be subjected to cross-examination at trial. The trial court ruled that the victim's statements were inadmissible under OEC 803(18a)(b) because the victim was over age 12; that is, the trial court concluded that the statute required that a declarant be "chronologically or mentally under 12 years of age" before the hearsay statements could be admitted, even when the declarant would testify and be cross-examined.

We reversed, stating flatly that, "under OEC 803(18a)(b), the hearsay statements of a child victim under 18 years of age are admissible so long as the child victim testifies at the proceeding and is available for cross-examination." *Lamb*, 161 Or App at 68. Relying on the same text that we find dispositive here, we explained that

"the 'either/or' syntax of the sentence indicates that the legislature intended to admit two classes of out-of-court

statements by child victims: (1) *statements made by any child who testifies and is subject to cross-examination*; (2) statements made by any child under the chronological or mental age of 12 who is unavailable as a witness. The legislature's use of disjunctive 'either/or' sentence structure to distinguish the two classes suggests that children under the age of 12 are a narrower subset of the larger class of 'child victims.' Thus, the plain language of OEC 803(18a)(b) suggests that the out-of-court statements of a 'child' over the age of 12 are admissible so long as the child testifies and is available for cross-examination."

*Id.* at 70 (emphasis in original). Thus, *Lamb* establishes that one of the required conditions for admissibility through the second door of OEC 803(18a)(b)—the child's chronological or mental age—is not a relevant consideration when the state seeks to introduce hearsay statements by having the victim testify and be subject to cross-examination.

Defendant argues that the statute contemplates that a declarant may "testif[y]" and be "subject to cross-examination" while that declarant is "unavailable" under the statute, *viz.*, the declarant may testify but have a "substantial lack of memory of the subject matter of the [out-of-court] statement." Defendant asserts that the statute does not permit that overlapping state of affairs, contending, in effect, that OEC 803(18a)(b) requires the trial court to determine that the declarant is not "unavailable"—within the meaning of the statute—before allowing the declarant to testify.

Defendant's argument fails for the same reason that the defendant's argument in *Lamb* failed; it attempts to convert what is a key to the second door (unavailability of the witness) into a barricade of the first. As we have explained, the statute, by its terms, does not require the proponent of the out-of-court statements to qualify a testifying witness as not "unavailable" in order for those statements to be admissible under OEC 803(18a)(b). Instead, the statute provides only two conditions that must be met to unlock the first door of admissibility: that the declarant "testifies at the proceeding" and "is subject to cross-examination." Whether the victim was "unavailable" within the meaning of OEC 803(18a)(b)

was irrelevant to those conditions and there was accordingly no need to conduct the pretrial hearing that defendant contends was required.

We next consider defendant's contention that the Confrontation Clause of Article I, section 11, of the Oregon Constitution entitled him the opportunity to cross-examine the victim at an OEC 803(18a)(b) pretrial availability hearing. The Confrontation Clause provides, "In all criminal prosecutions, the accused shall have the right to *** meet the witnesses face to face ***." In effect, defendant contends that he had a constitutional right to confront the victim outside the presence of the jury for the purpose of resolving an evidentiary issue under OEC 803(18a)(b) in addition to an opportunity to cross-examine the victim in front of the jury. Although we have already concluded that the court was not required to hold a pretrial OEC 803(18a)(b) hearing in the first place, we conclude that it is necessary to address defendant's confrontation argument in light of the Oregon Supreme Court's decision in *Kitzman*.

In *Kitzman*, the defendant stood accused of sex crimes involving three young children, M, L, and L2. The children had made hearsay statements implicating the defendant. The trial court held a pretrial hearing under OEC 803(18a)(b) (1991)[6] for the purpose of determining M and L2's availability and competency. Defendant was excluded from that hearing. The court permitted defense counsel to attend but prohibited counsel from examining the children. The court ruled that L2 was unavailable to testify because of her "young age and an inability to communicate in a court setting." *Id.* at 593. The court also ruled that M was unavailable to testify because it found that he would be likely to suffer lasting and severe emotional trauma from testifying. Nonetheless, the court ruled that each child's prior out-of-court statements were admissible under OEC 803(18a)(b) because they were both corroborated and contained sufficient indicia of reliability. M and L2 did not testify at trial,

---

[6] OEC 803(18a)(b) has been amended several times since consideration of *Kitzman*. None of those changes affects our analysis, and we will hereafter refer to the present version of the statute for simplicity's sake.

but the trial court admitted many of their out-of-court statements.

The Supreme Court began its constitutional analysis by describing the two interests that are protected by the Article I, section 11, confrontation right:

> "The right of confrontation protects two vital interests of the defendant. First, it guarantees that the defendant has an opportunity to cross-examine the witness against him in order to test the witness' sincerity, memory, ability to perceive and relate, and the factual basis of the witness' statements. This purpose of confrontation helps to assure the accuracy of the result of the truth-determining process by giving the accused an opportunity to test the recollection and sift the conscience of a witness.

> "The second interest of the defendant which the right to confrontation protects is enabling the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the credibility of the witness is displayed in the courtroom. This second purpose is no less important than the first."

*Id.* at 603 (internal quotation marks, ellipsis, brackets, and formatting omitted). The court then noted that "a defendant's confrontation rights attach at a pretrial availability hearing." *Id.* at 605 (footnote omitted). For that proposition, the court cited *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985), a case in which, like *Kitzman*, the child declarant did not testify at trial. The court then explained:

> "[I]n a criminal proceeding, if a living witness is *not* declared incompetent by a trial court, and that witness' hearsay statements are admitted at trial as evidence against the defendant, the defendant's rights under Article I, section 11, of the Oregon Constitution, are violated. It follows that, when the state seeks to introduce such hearsay statements, the unavailability of the declarant first must be shown, in order to secure the defendant's rights under Article I, section 11. The pretrial availability hearing serves as *one means* of protecting a defendant's confrontation rights."

*Kitzman*, 323 Or at 605 (footnote omitted; first emphasis in original; second emphasis added). Finally, in language that defendant relies on here, the court stated that "the trial court erred in (1) excluding defendant from the pretrial

availability hearing while M and L2 were testifying, and (2) precluding defense counsel from examining M and L2 at that hearing." *Id.* at 606.

It is evident why *Kitzman* does not apply in the present case. *Kitzman* concerned a situation where the defendant was never given an opportunity to cross-examine his accusers; that is, the case addressed whether an alternative to the declarants' in-court testimony and cross-examination was a constitutionally permissible method by which to admit their out-of-court statements. There is no need to consider such an alternative in this case, for defendant's right to "meet the witnesses face to face" was satisfied in the most preferable manner, *viz.*, by cross-examination of the witness in front of the jury. Defendant had a full opportunity to test the (competent) witness's sincerity, memory, ability to perceive and relate, and the factual basis of her statements as well as to demonstrate to the jury the witness's demeanor when confronted by the defendant. *Id.* at 603; *see State v. Sullivan*, 217 Or App 208, 213, 174 P3d 1095 (2007), *rev den*, 344 Or 539 (2008). ("In this case, defendant was given a full and fair opportunity to cross-examine the victim about her testimony and about her lack of memory about certain specifics and then to argue that, because of the nature of her answers, 'scant weight' should be given to the testimony."); *accord Nelson v. O'Neil*, 402 US 622, 626, 91 S Ct 1723, 29 L Ed 2d 222 (1971) ("[T]he 'confrontation' guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial*[.]" (Emphasis added.)). Because the victim testified at trial and defendant was given the opportunity to cross-examine her in front of the jury, Article I, section 11, did not give defendant a right to also cross-examine her at a pretrial hearing.

Defendant last assigns error to the trial court's denial of his motion for a mistrial. "A trial court's decision whether to grant a mistrial will be reversed only if the decision is an abuse of discretion." *State v. Woodall*, 259 Or App 67, 74, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014). "Abuse of discretion occurs only when the court's ruling is not one of several legally correct outcomes." *Id.* (internal quotation marks omitted).

As noted, defendant argued in the trial court that a mistrial was warranted because the victim's testimony revealed that she was "unavailable" and that admission of the victim's hearsay statements therefore violated OEC 803(18a)(b) and the Oregon and federal confrontation clauses. In this appeal, defendant contends only that admission of those statements violated OEC 803(18a)(b) because the victim's trial testimony demonstrated that she was "unavailable" within the meaning of the statute.[7] As we have explained, however, because the victim testified at trial and was subject to cross-examination the court was not required to make any determination that the victim was "unavailable" under OEC 803(18a)(b) as a prerequisite to admitting her out-of-court statements. The court did not err in denying the motion for a mistrial.

Affirmed.

---

[7] We therefore do not address any constitutional issues pertaining to this assignment of error.