No. 397 May 7, 2025 287

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

POLLY ZAMORA-CHONA,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR63221; A181165

Adrian L. Brown, Judge.

Argued and submitted March 6, 2025.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this criminal case, defendant appeals his convictions for first-degree rape, ORS 163.375 (Count 2); first-degree unlawful sexual penetration, ORS 163.411 (Counts 5, 7, 9, 11, 13, and 15); and first-degree sexual abuse, ORS 163.427 (Counts 4, 6, 8, 10, 12, 14, 16-20, and 22-23).[1] Defendant raises five assignments of error, each challenging the admission of an out-of-court statement made by the complaining witness, V. Defendant argues that those statements were not admissible under the hearsay exception set out in OEC 803(18a)(b) because V was "unavailable" (as that term is specifically used in the rule) due to her lack of memory, and the statements were not sufficiently corroborated. For the reasons that follow, we affirm.

## I.   BACKGROUND

Defendant married Zamora, V and S's mother, in 2014, when V was five years old, and S was seven years old. Defendant, Zamora, and the two girls lived together in a three-bedroom house.

In 2020, after one of the children erased a chore wheel from the household whiteboard, Zamora talked to her children about the importance of telling the truth. Afterwards, V came to Zamora crying, and she told her mother that defendant had touched her inappropriately—in one instance, defendant "tried to have intercourse" with V in Zamora's closet, and in another instance, defendant touched V's breasts and "private areas" while Zamora was at work. After that conversation, Zamora asked S if anything had happened to her, and S said that defendant had touched her stomach close to her "private area," which made her uncomfortable.

Zamora called the police and reported the girls' allegations. Zamora later took S and V to CARES Northwest (CARES)—an organization specializing in child abuse intervention—and they performed investigatory medical examinations and forensic interviews.

---

[1] The jury acquitted defendant of one count of first-degree sexual abuse, ORS 163.427 (Count 21). The trial court merged the first-degree rape verdicts in Counts 1 and 3 into Count 2.

At CARES, V initially declined an anogenital exam. During a second CARES evaluation, V cooperated with that exam, and Dr. Grigsby, the pediatrician who performed the exam, noted that V had a "partial transection" of the hymen. Based on V's CARES evaluation report and the hymeneal defect, Grigsby opined that "there had been an injury that had healed." Grigsby noted that the "partial transection" could be "just the way [that V] is made," but it could also have been caused by past trauma. V also had two interviews with a CARES forensic interviewer, Kim Goldstien. During those interviews, V disclosed instances where defendant had raped and sexually abused her.

During S's CARES interview, S said that defendant hugged her differently when Zamora was not around, which made her uncomfortable. In addition, S said that defendant put his hand inside S's shirt and rubbed her back near or under her bra strap. V testified before the grand jury, stating that defendant touched her inappropriately, more than once, when she was nine or 10 years old. She testified as to the closet incident, that defendant had touched her breasts (both over and under clothes), that he squeezed her buttocks, and that he penetrated her vagina with his fingers more than once.

Before the trial, the state filed a motion *in limine* and memorandum to admit V's hearsay statements, citing as authority the hearsay exception in OEC 803(18a)(b). When the parties discussed pretrial matters, defense counsel's only objection was that the hearsay evidence would be "cumulative."

At trial in 2022, V was 13 years old. On the first day of the state's presentation of evidence, V testified that defendant did something that made her feel uncomfortable, but it was hard for her to explain, and she did not remember the things that defendant did that made her feel uncomfortable. V also did not remember telling Zamora about how defendant made her feel or anything about the chore wheel. She also did not "remember that much" about going to CARES. V became upset during questioning, and the trial court called a recess "to allow the witness to compose herself." On cross-examination, V testified that she did not "remember much"

about going to CARES. After the redirect examination, the court asked whether V was "subject to recall," and the prosecutor answered, "not at this time."

Zamora testified after V and S. When Zamora began to testify about V's disclosures, defendant objected on hearsay grounds. He noted that OEC 803(18a)(b) provides an exception to hearsay for statements concerning abuse, but he argued that, because V did not remember "any disclosure through the mom, to CARES, grand jury, or anything, that she would be considered unavailable and not subject to cross-examination." The state argued that V was not "unavailable" because she testified and was subject to cross-examination. The trial court overruled defendant's hearsay objection, concluding that the statement could be admitted even if V was unavailable because V was under 12 years old when she made the statement at issue, and it "anticipated corroborative evidence" based on the state's proffer that Grigsby would testify at trial regarding the physical signs of sexual abuse.

Following that ruling, defendant argued that the admission of V's testimony would violate his constitutional right to confront the witness because he could not "cross-examine about the details of the accusation[s] themselves." The trial court concluded that V was available for cross-examination and her statements were not testimonial, so defendant's constitutional confrontation rights would not be violated by admission of V's hearsay testimony:

"*** I believe that based on what I saw of the witness, that she certainly made a good faith sort of acknowledgement of the obligation to tell the truth, didn't have any problems with the oath, and based on perceiving her emotions, the break, the reasons why she couldn't remember, as far as what she says, about how long ago things were, and her age, that, you know, whether it's trauma or fear, I think she did her best and she was subject to cross-examination.

"And certainly the defendant is entitled to confrontation and cross-examination of his accusers, but it doesn't mean he gets to have the cross-examination he wants to have. And here, I think both, like I said in the beginning, both the direct and the cross-examination were not what either side was expecting today, but she was available. She

testified. And I do believe that the defendant did have his confrontation rights available to him and there were certainly other aspects of her testimony that could have been confronted."

The trial court reserved ruling on whether V was available for cross-examination for purposes of the CARES interview and grand jury statements.

Defendant then requested an OEC 104 hearing to "ensure the reliability" of V's statements to her mother.[2] Based on Zamora's testimony, defendant argued that V's statements were not sufficiently reliable, because V was not credible based on evidence that she had lied to avoid getting into trouble. The trial court affirmed its ruling that V's statements to Zamora were sufficiently reliable. After that ruling, Zamora resumed her testimony to the jury, and she testified about V's disclosures that defendant raped and sexually abused her.

At the end of that trial day, the state informed the court that it intended to introduce the CARES evidence and V's grand jury testimony based on OEC 803(18a)(b). The trial court concluded that V had "not been shown to be available for purposes of the *** confrontation requirement" to admit the CARES interview. The trial court then granted the state's request to recall V to establish "availability" for the CARES disclosures.

The state called V outside the presence of the jury. V testified that, when she had initially testified, she was nervous and confused by defense counsel's questions. She believed that defense counsel asked whether she remembered the specific questions that the CARES interviewer had asked during her the interview, not whether she remembered going to CARES altogether. V testified that she remembered going to CARES and that viewing a portion of the CARES video would refresh her recollection as to what was discussed during that interview. After the prosecutor

---

[2] OEC 104 provides, in part:

"(1) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court ***. In making its determination the court is not bound by the rules of evidence except those with respect to privileges."

played the beginning of the CARES video, V testified that she remembered going to CARES and speaking to the interviewer. She agreed that at the time of the interview, she had a better memory of the things they talked about. She also testified that she remembered the subject matter of what had been discussed, specifically, the "touching" relating to defendant.

Based on that examination, the trial court ruled that the state could recall V to testify for the jury, and it concluded that V was "available" for confrontation clause purposes. The court said that it would provide defendant wide latitude to cross-examine V regarding her hearsay statements:

> "And as I said yesterday, I am going to give the defense leeway on cross to challenge [V's] statements, all of her statements, all of her statements, whether or not it was yesterday, whether or not it was grand jury, CARES to the detective. So even if the State does not explore those on direct, I am going to allow the defense leeway to cross her on those statements because she is putting those statements and her memory of them at issue by testifying here ***."

On the second day of the state's case, the state recalled V, and she testified that she remembered going to CARES, but she did not remember what the staff asked her. She remembered talking to a forensic interviewer about defendant and "the touching." Defendant cross-examined V, and she testified that she did not really remember the incidents involving defendant, but she "kind of" remembered "the closet part." V testified that she remembered going to CARES more than once, and she acknowledged saying different things at the two interviews. On redirect examination, V testified that she had difficulty understanding the questions on the first day of trial because she was distracted by the Spanish interpretation. She also testified that, when she was 10 or 11 years old, defendant picked her up, took both their pants down, and "tried to put his private part inside of [her]." She testified that "really bad touching" happened in the closet, and afterwards, V ran to the bathroom, saw blood, and tried to clean herself. Lastly, she testified that defendant told her not to tell anyone.

During the trial, the trial court admitted the recordings of V's CARES interviews and her grand jury testimony, and the jury convicted defendant of most of the charged offenses. Defendant now appeals.

## II.   DISCUSSION

On appeal, defendant presents five assignments of error, contending that the trial court erred when it admitted five pieces of evidence: (1) V's hearsay statements to Zamora, (2) an audio recording of V's grand jury testimony, (3) a transcript of V's grand jury testimony, (4) a video recording of V's first CARES interview, and (5) a video recording of V's second CARES interview. Defendant presents two distinct arguments challenging the admission of that evidence under OEC 803(18a)(b). First, with regard to V's hearsay statements to Zamora, defendant argues that the statements were not corroborated by independent evidence of the act of abuse *before* their admission. Second, with regard to the grand jury testimony and CARES interviews, defendant argues that, although the trial court correctly determined that V was available for confrontation purposes, it erred when it concluded that V was available for cross-examination under OEC 803(18a)(b).

"We review a trial court's interpretation of the requirements of OEC 803(18a)(b) *** for legal error." *State v. Kelly*, 276 Or App 507, 510, 368 P3d 47, *rev den*, 360 Or 401 (2016). OEC 803(18a)(b) provides that certain hearsay statements are admissible in sexual abuse cases notwithstanding the rule against the admissibility of hearsay:

> "A statement made by a person concerning an act of abuse as defined in ORS 107.705 *** is not excluded by [OEC 802] if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made ***. However, if a declarant is unavailable, the statement may be admitted in evidence only if the proponent establishes that the time, content and circumstances of the statement provide indicia of reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and

that the statement possesses indicia of reliability as is con-
stitutionally required to be admitted."

OEC 803(18a)(b) also defines "unavailable," and it prescribes
a specific procedure for determining whether a witness is
"unavailable":

> "For purposes of this paragraph, in addition to those sit-
> uations described in [OEC 804(1)], the declarant shall be
> considered 'unavailable' if the declarant has a substantial
> lack of memory of the subject matter of the statement, is
> presently incompetent to testify, is unable to communicate
> about the abuse or sexual conduct because of fear or other
> similar reason or is substantially likely, as established by
> expert testimony, to suffer lasting severe emotional trauma
> from testifying. Unless otherwise agreed by the parties,
> the court shall examine the declarant in chambers and on
> the record or outside the presence of the jury and on the
> record. The examination shall be conducted immediately
> prior to the commencement of the trial in the presence of
> the attorney and the legal guardian or other suitable per-
> son as designated by the court. If the declarant is found to
> be unavailable, the court shall then determine the admissi-
> bility of the evidence. *** The purpose of the examination
> shall be to aid the court in making its findings regarding
> the availability of the declarant as a witness and the reli-
> ability of the statement of the declarant. In determining
> whether a statement possesses indicia of reliability under
> this paragraph, the court may consider, but is not limited
> to, [a list of statutory factors]."

With that statutory background, we address defendant's
two arguments in turn.

A.    *The Corroboration of V's Hearsay Statements to Zamora*

As previously noted, when defendant objected on
hearsay grounds to Zamora's testimony about V's initial dis-
closures on the first day of the state's case, the trial court
admitted V's statements to Zamora under OEC 803(18a)(b).
The court concluded that, despite V's "unavailability" due
to her lack of memory, V was under the age of 12 when she
made her statements, and the court "anticipated corrobora-
tive evidence" based on the state's proffer.

On appeal, defendant argues that the trial court
erred in relying on yet-to-be-produced evidence to corroborate

V's statements to Zamora because the court was required to receive the state's corroborative evidence *before* the court admitted the evidence. In addition, defendant argues that the corroborative evidence did not corroborate most of the hearsay statements at issue—*i.e.*, the evidence only corroborated the rape, and it did not corroborate the hearsay relating to inappropriate touching. The state contends that defendant failed to preserve this argument and has not requested plain error review. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error.").

We agree that defendant failed to preserve his argument relating to corroboration. Defendant made no objection regarding the prospective corroborative evidence, and he focused on the reliability of V's statements when making his hearsay objection. In addition, after the court made its ruling on the hearsay issue and noted that it "anticipated corroborative evidence," defendant did not make any argument as to that evidence or request that the court receive that evidence prior to its ruling.

We also note that, to any extent that we might consider reviewing for plain error absent a request by defendant, we would not do so here because, even if the court plainly erred in ruling on corroboration before the state presented the corroborating evidence, the record likely would have developed differently if defendant had objected on that ground. *See State v. Reynolds*, 250 Or App 516, 520-21, 280 P3d 1046, *rev den*, 352 Or 666 (2012) (even when plain error conditions are satisfied, we may exercise our discretion to reach the error and correct it by considering relevant factors, including "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *." (Quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).)).

B.  *"Unavailability" for Statements Made to CARES and the Grand Jury*

Defendant argues that the trial court erred in admitting V's statements to the CARES interviewer and her grand jury testimony because V was "unavailable" due to "a substantial lack of memory of the subject matter of the statement[s]." OEC 803(18a)(b). According to defendant, the trial court erred in concluding that V was "available" under OEC 803(18a)(b) because it solely relied on rules relating to the confrontation clause, and it did not independently evaluate whether V was "available" for cross-examination pursuant to OEC 803(18a)(b).

OEC 803(18a)(b) permits the admission of hearsay testimony concerning an act of abuse "if the declarant *either* testifies at the proceeding and is subject to cross-examination, *or* is unavailable as a witness ∗∗∗." (Emphasis added.); *accord State v. Akins*, 373 Or 506, 522, ___ P3d ___ (2025) ("The rule requires that the declarant must testify at the proceeding and be subject to cross examination unless the declarant is 'unavailable as a witness ∗∗∗.'"). We have noted that "OEC 803(18a)(b) does not create a barrier to the admissibility of evidence. Instead, the opposite is true. OEC 803(18a)(b) creates an exception to the general prohibition against the admissibility of hearsay evidence, provided that certain conditions are met." *State v. Lobo*, 261 Or App 741, 752-53, 322 P3d 573, *rev den*, 355 Or 880 (2014). Based on the wording of the statute, there are "two doors" for admission of statements under OEC 803(18a)(b). *Id.* at 753. "If the proponent of the evidence passes through either of those doors, the statements at issue are admissible under the statute." *Id.* And a declarant's "unavailability," as determined by OEC 803(18a)(b), is irrelevant as to whether the state may proceed with admitting the hearsay via the first "door," *i.e.*, when a declarant "testifies" and is "subject to cross examination." *Id.* at 754-55.

In *Lobo*, the defendant requested a pretrial hearing to determine the victim's "availability" to testify at trial; specifically, the defendant sought to determine whether the victim had "a substantial lack of memory of the subject matter of the out-of-court statement." *Id.* at 749 (internal quotation

marks and brackets omitted). The trial court denied the defendant's request for a pretrial "availability" hearing, but it suggested that it would revisit the issue of the victim's availability at the competency hearing, which would be held before the victim testified before the jury. *Id.* During trial and before the victim testified, several witnesses testified about the victim's prior statements of abuse. *Id.* at 750. Outside the presence of the jury, the trial court held a competency hearing, rejected the defendant's request to cross-examine the victim at that hearing, and determined that the victim was competent. *Id.* Notably, "the victim had not been asked about her ability to recall the incident of abuse." *Id.* When the victim testified before the jury, she testified that the defendant had "poked [her] hole" with his fingers. *Id.* The defendant cross-examined the victim, who "was responsive to the vast majority of the defense questioning," but also "indicated that she could not remember the circumstances pertaining to two of the out-of-court statements that previous witnesses had attributed to her." *Id.* After the victim's testimony, the defendant requested that the trial court declare a mistrial pursuant to OEC 803(18a)(b) and the confrontation clauses of the state and federal constitutions. *Id.* at 751. The defendant argued that the victim's testimony revealed that she was "unavailable" because she "demonstrated a lack of ability to remember her hearsay statements." *Id.* at 750-51. The trial court denied that motion. *Id.* at 751.

On appeal, the defendant argued that the trial court erred in denying his motion for a pretrial hearing to determine whether the victim was "unavailable" for purposes of OEC 803(18a)(b), and the trial court erred when it denied defendant the opportunity to cross-examine the victim during her competency hearing regarding her availability. *Id.* The defendant argued that OEC 803(18a)(b) "contemplates that a declarant may 'testif[y]' and be 'subject to cross examination' while the declarant is 'unavailable' under the statute, *viz.*, the declarant may testify but have a 'substantial lack of memory of the subject matter of the [out-of-court] statement.'" *Id.* at 754 (brackets in original).

We rejected the defendant's argument, noting that "OEC 803(18a)(b) does not create a barrier to the admissibility

of evidence." *Id.* at 752. In reviewing the statute "in view of its purpose" and its "syntax," we concluded that OEC 803(18a)(b) creates "two doors" for the admissibility of hearsay evidence: "If the proponent of the evidence passes through either of those doors, the statements at issue are admissible under the statute." *Id.* at 753. We also concluded that the defendant's argument "attempt[ed] to convert what is a key to the second door (unavailability of the witness) into a barricade of the first." *Id.* at 754. According to the terms of OEC 803(18a)(b), the proponent of the out-of-court statements is not required "to qualify a testifying witness as *not* 'unavailable' in order for those statements to be admissible under OEC 803(18a)(b)." *Id.* (Emphasis added.). Thus, "whether the victim was 'unavailable' within the meaning of OEC 803(18a)(b) was *irrelevant*" to the "two conditions that must be met to unlock the first door of admissibility: that the declarant 'testifies at the proceeding' and 'is subject to cross-examination.'" *Id.* at 754-55 (emphasis added).

In a later case, we applied the "two door analogy" to affirm the trial court's admission of hearsay under OEC 803(18a)(b). *State v. Bailey*, 270 Or App 146, 149, 347 P3d 342, *rev den*, 357 Or 743 (2015). In *Bailey*, the five-year-old victim testified at the trial, but she could not remember many of the contacts that constituted sexual abuse, and she only remembered one contact. *Id.* at 148. The defendant argued that the trial court erred when it failed to determine whether the victim was unavailable as a witness under OEC 803(18a)(b) based on her lack of memory. *Id.* Citing *Lobo*, we concluded that "[t]he victim satisfied the first condition under OEC 803(18a)(b) because she testified and was cross-examined, and, thus, whether she was 'unavailable' is immaterial to that condition for the admission of her out-of-court statements." *Id.* at 149.

Based on our decisions in *Lobo* and *Bailey*, defendant's argument that V was not "subject to cross-examination" pursuant to OEC 803(18a)(b) because she qualified as an unavailable witness under that statute fails. The syntax of OEC 803(18a)(b) contemplates two separate avenues for the admission of hearsay evidence relating to child sexual abuse. *Lobo*, 261 Or App at 753; *see State v.*

*Lamb*, 161 Or App 66, 70, 983 P2d 1058 (1999) (holding that the trial court did not err in admitting the out of court statements of a 17-year-old sexual abuse victim—and rejecting the defendant's argument to exclude those statements when the victim was over the age of 12—because "the 'either/or' syntax of the sentence indicates that the legislature intended to admit *two classes* of out-of-court statements by child victims: (1) statements made by *any* child who testifies and is subject to cross-examination; (2) statements made by any child under the chronological or mental age of 12 who is unavailable as a witness" (emphasis added)). Because the statute contemplates two distinct avenues for hearsay admission, the "unavailability" definition in OEC 803(18a)(b) does not impact the "subject to cross examination" requirement within the first "door." In other words, defendant's argument that the declarant was "unavailable" pursuant to OEC 803(18a)(b) is "irrelevant" to whether the declarant met the two conditions for the first door of admissibility—that V testified and was subject to cross examination. *Lobo*, 261 Or App at 754-55.

In addition, defendant had the opportunity to cross-examine V about her statements. On the second day of testimony, V testified that she remembered going to CARES, she remembered the subject matter of what had been discussed, and she remembered discussing "touching" relating to defendant. That testimony provided defendant an opportunity to cross-examine V as to her out-of-court statements. *See State v. Pollock*, 251 Or App 755, 759, 284 P3d 1222 (2012), *rev den*, 353 Or 280 (2013) (concluding that, in a confrontation clause challenge, the defendant had an adequate opportunity to cross-examine the child victim when the victim remembered the statements that she had made, but the child did not testify as to the facts of the abuse). Therefore, because V testified at the trial and was subject to cross-examination, the trial court did not err in admitting her hearsay statements under OEC 803(18a)(b).

Affirmed.